**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**



FILED

MAY 1 3 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**LANAIRE E. WHITE,**

                    **Petitioner,**

                                        **Civil No.:  4:13cv64**
**v.**                                   **Criminal No.:  4:11cr11**

**UNITED STATES OF AMERICA,**

                    **Respondent.**

### OPINION AND ORDER

This matter is before the Court on Lanaire E. White's ("Petitioner")[1] Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 motion alleges several claims, the majority of which challenge the Court's authority or jurisdiction. Additionally, Petitioner alleges that his counsel provided constitutionally ineffective assistance. The government opposes such motion, contending that most of Petitioner's claims are procedurally defaulted and all of his claims fail on the merits. Having considered the briefs and record, the Court finds that an evidentiary hearing is unnecessary because the materials before the Court conclusively demonstrate that Petitioner is not entitled to the relief sought

---

[1] Petitioner is also known as "Lanaire White-Bey" and "Lanaire Elton White-Bey."

in his § 2255 motion.  See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a).  For the reasons discussed below, Petitioner's § 2255 motion is **DISMISSED** and **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February of 2011, a grand jury returned a criminal indictment charging Petitioner with eleven criminal counts, including eight counts of wire fraud.  On March 24, 2011, Petitioner made his initial appearance before the Court, but he refused to acknowledge that he was "Lanaire White" and refused to provide any other name.  Initial Appearance Tr. 2-4, ECF No. 38.  Petitioner did indicate on the record that he did not want an attorney appointed to represent him.  Although the Court permitted Petitioner to remain pro se at that time, it appointed "temporary" standby counsel to help advise Petitioner of his rights.  Id. at 7-8.

On March 28, 2011, the Court conducted a detention hearing that also served as an "identity hearing" because Petitioner continued to refuse to provide his name to federal authorities.  Such hearing began by the Court asking Petitioner whether he was "Lanaire White"; Petitioner responded: "No, sir."  Detention Hearing Tr. 3, ECF No. 39.  The Court followed up by asking Petitioner to provide his name; Petitioner responded: "I'm sorry, I can't give you my name."  Id.  Upon further inquiry,

2

Petitioner refused to tell the Court what he should be called for the purposes of the hearing. Id.

When the Court explained to Petitioner the purposes of the detention hearing, he continually refused to acknowledge that he understood what the Court was saying, and instead indicated either that he was not Lanaire White,[2] that he did not "consent," or that the Court did not have jurisdiction. Id. at 4-5. Upon further questioning, Petitioner did indicate his desire to proceed without an attorney, and the Court continued to allow him to proceed pro se at such hearing. Id. at 20-24. At the conclusion of the hearing, the Court again advised Petitioner that he currently had standby counsel, and that if he chose to represent himself at trial he would be "held to the same rules and statutes that all parties are held to." Id. at 36. The Court also recommended that Petitioner consider abandoning his request to proceed pro se, and scheduled an arraignment for later that same week. Id. at 37-38.

On March 31, 2011, Petitioner appeared for his arraignment. The Court began by noting that it wanted to make sure that Petitioner understood the seriousness of the charges against him and the implications of proceeding without the benefit of

---

[2] The government presented evidence at the identity/detention hearing demonstrating that Petitioner not only had a driver's license identifying him as Lanaire White, but that his fingerprints confirmed the he was Lanaire White. Detention Hearing Tr. 11-13, ECF No. 39.

counsel.    Arraignment Tr. 3-4, ECF No. 40.    The Court reviewed

the charges and asked Petitioner if he understood that he was

charged with ten crimes.    Petitioner stated "No," and again

indicated his desire to challenge the jurisdiction of the Court.

Id. at 5.    The following exchange then occurred:

> THE COURT: All right. I mentioned to you that you'll
> have an opportunity, if you believe that there's a
> jurisdictional defect, to raise that. But at this
> point in time I'm simply asking if you understand that
> the United States has accused you of 10 counts. Do you
> understand that?
> DEFENDANT:    No, that's (inaudible), and I do not
> understand that.
> THE COURT: You do not understand that the government
> has charged you with 10 different crimes?
> DEFENDANT: No. I understood they convicted me already.
> THE COURT: No, you have not been convicted. But do you
> understand you have been charged?
> DEFENDANT: From my understanding, according to the
> 13th Amendment, I am convicted already.
> THE COURT: No, you are not convicted. You have not
> been convicted, but you have been charged, and I'm
> asking if you understand those charges?
> DEFENDANT: I'm being held to involuntary servitude
> without being duly convicted.
> THE COURT: If you were found guilty of the first
> charge against you, conspiracy to commit wire fraud,
> you could be sentenced to prison for five years. Do
> you understand that?
> DEFENDANT: No, I don't.
> THE COURT: If you were found guilty of Counts 2
> through 9, which each charge wire fraud, you could be
> sentenced to prison for five years on each of those
> counts. Do you understand that?
> DEFENDANT: No, sir, I do not understand. It does not
> sound like law to me.
> THE COURT: It does not sound like law to you?
> THE DEFENDANT: No.
> . . .
> THE COURT: All right. Mr. White, [the Assistant U.S.
> Attorney] has corrected my earlier admonition to you
> that you faced a possibility of five years in prison

4

for each count. You face the possibility of up to 20 years in prison on each count of wire fraud. Do you understand that?

**DEFENDANT:** No.

**THE COURT:** You don't understand?

**DEFENDANT:** No, sir.

**THE COURT:** Okay. Mr. White, based on your lack of understanding, I'm inclined to find that you are, in fact, not capable of representing yourself. And if I find that you're not capable of representing yourself, I would have to appoint counsel to represent you. So if you persist in saying that you don't understand anything about these proceedings, I will have to make a conclusion that you are not capable of representing yourself.

**DEFENDANT:** I don't even know what type of court I'm in because the court has not proven jurisdiction yet. And the court -- you cannot proceed without proving jurisdiction. That's Lantana v. Hopkins. U.S. Supreme Court. State law.

**THE COURT:** You're in the United States District Court for the Eastern District of Virginia. You have been charged by a Grand Jury that was duly sworn by this court with wire fraud and conspiracy to commit wire fraud. And if you don't understand any of that, then you are not capable of representing yourself, and I am going to find that you are not capable of representing yourself and I will appoint an attorney to represent you, and then it will be attorney's job to decide whether you're competent to -- or need -- or we need a competency evaluation to determine whether you're mentally fit to stand trial. But frankly I don't think you're unfit. I think you're just arguing with me. I think you do understand, and you're just answering that way because you think that it will cause me grief and it will make it more difficult for the court to proceed with this prosecution.

**DEFENDANT:** I don't think --

**THE COURT:** What I'm telling you is that you can't have it both ways. Either you understand and you want to represent yourself and you're going to put on your own defense, or if you don't understand, you can't represent yourself. So which is it? Do you understand or do you not understand?

**DEFENDANT:** I don't understand this colorable law.

**THE COURT:** Okay. Well, then, I'm not going to allow you to go forward with this arraignment without the

> benefit of counsel and I'm going to find that you're
> not capable of appearing on your own behalf. You do
> not appear to be capable of entering an informed plea
> to these charges without the assistance of counsel.
> . . .

Id. at 5-10.

After such exchange, the Court appointed counsel over
Petitioner's objection. As the hearing progressed, Petitioner
continued to ignore the instructions of the Court, again stated
that he was not Mr. White, and refused to provide his age to the
Court because it was "irrelevant to the case." Id. at 14-15.
After Petitioner refused to answer any additional questions, the
Court stated that it would "just enter a not guilty plea based
on Mr. White's refusal to cooperate." Id. at 15.

The day after Petitioner's arraignment, the Court issued a
written order appointing counsel, and expressly indicated
therein that if Petitioner "still wishes to proceed pro se, and
is able to demonstrate that his waiver of counsel is knowing and
voluntary, with a full understanding of the charges against him
and possible penalties, he may present his request to the trial
judge by an appropriate pretrial motion." Order 2, ECF No. 20.
Moreover, Petitioner was arraigned for a second time after the
grand jury returned a superseding indictment adding additional
criminal counts, and at such hearing, the Magistrate Judge again
informed Petitioner that he could pursue self-representation by
filing a motion. See Second Arraignment Tr. 8-9, ECF No. 47

6

(explaining to Petitioner that if he wishes to invoke his right to self-representation, he "should ask [his] attorney to file a motion to that effect . . . [and] the district judge assigned to the case will take it up"). No such motion was ever filed in this case.

Prior to trial, Petitioner's counsel filed a motion challenging this Court's jurisdiction, ECF No. 21, and a motion challenging the detention order issued by the Magistrate Judge, ECF No. 36. Both motions were denied by the undersigned Judge, as was Petitioner's renewed "oral motion" challenging this Court's jurisdiction. ECF Nos. 35, 48.

Petitioner proceeded to trial under the representation of his court-appointed counsel. At the conclusion of the three-day jury trial, Petitioner was found guilty of all counts pending against him. Petitioner was thereafter sentenced to eighty-four (84) months imprisonment. Petitioner's counsel timely noted an appeal, and on appeal, Petitioner challenged this Court's jurisdiction over the criminal case. On May 4, 2012, the Fourth Circuit issued an opinion rejecting Petitioner's jurisdictional challenge and affirming his conviction. United States v. White, 480 F. App'x 193, 194-95 (4th Cir. 2012).

On May 6, 2013, Petitioner timely filed his § 2255 motion. The government was ordered to file a written response to Petitioner's motion, and was later granted an extension of time

to file such response.   The government's brief was received on September 12, 2013, and Petitioner's reply brief was filed on October 10, 2013.   This matter is therefore ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence."   28 U.S.C. § 2255(a).   To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack."   Id.   A petitioner must prove the asserted grounds for relief by a preponderance of the evidence.   Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).   Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion."   Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a

8

direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). To the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States

9

v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992).  "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'"  United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493).  As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence.  Mikalajunas, 186 F.3d at 494.  Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. Bousley v. United States, 523 U.S. 614, 623 (1998).  A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  House v. Bell,

10

547 U.S. 518, 536-37 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion.  See <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting <u>United States v. Williams</u>, 977 F.2d 866, 871 (4th Cir. 1992))).  Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim.  <u>United States v. Baptiste</u>, 596 F.3d 214, 216 n.1 (4th Cir. 2010); <u>see</u> <u>United States v. Allen</u>, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The Supreme Court has interpreted the right to

11

counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see

12

Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks"—such strategic decisions must be afforded "'enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)); see Strickland, 466 U.S. 690-91 (indicating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

13

Case 4:11-cr-00011-MSD-TEM   Document 113   Filed 05/13/14   Page 14 of 34 PageID# 1429

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

## III. DISCUSSION

Petitioner's motion advances the following claims: (1) this Court abused its discretion by appointing counsel over Petitioner's objection; (2) the Court erred by failing to determine if Petitioner was financially eligible for counsel; (3) defense counsel provided ineffective assistance by failing to challenge the Court's jurisdiction, failing to challenge the legal status of Federal Reserve Notes, and failing to advance various other challenges to the trial evidence; (4) this Court lacked jurisdiction over the case; and (5) this Court imposed an

14

unconstitutional restitution judgment.   As discussed below, the
majority of such claims are dismissed as procedurally defaulted,
and all claims are denied on the merits.

### A. Improper Appointment of Counsel

Petitioner first argues that this Court abused its
discretion by appointing counsel over Petitioner's objection, as
he sought to invoke his right to represent himself in this case.
Petitioner, however, failed to raise such claim of error on
direct appeal.   Accordingly, such claim is procedurally
defaulted.   Frady, 456 U.S. at 167-68.   Although procedural
default may be overcome by demonstrating "cause" and
"prejudice," id., here, Petitioner fails to demonstrate either
cause for failing to litigate such claim on appeal or resulting
prejudice.   Petitioner has likewise failed to demonstrate that a
"miscarriage of justice would result from the refusal of the
court to entertain" the instant claim.   Mikalajunas, 186 F.3d at
494.   Accordingly, Petitioner's first claim is **DISMISSED** as
procedurally defaulted.

Alternatively, even if this Court had the ability to reach
the merits of this procedurally defaulted claim, it would be
rejected.   Although a criminal defendant generally has the right
to waive his constitutional right to counsel and defend himself
pro se, a defendant's "right to self-representation is not
absolute."   United States v. Frazier-El, 204 F.3d 553, 559 (4th

15

Cir. 2000). Rather, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" because the "right of self-representation is not a license to abuse the dignity of the courtroom." Faretta v. California, 422 U.S. 806, 834 n.46 (1975); see Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 162 (2000) (recognizing that a trial judge may "terminate self-representation . . . -even over the defendant's objection-if necessary" and that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer"); see also Frazier-El, 204 F.3d at 559 (indicating that when a defendant "manipulate[es] the mutual exclusivity of the rights to counsel and self-representation" the court "must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation" (quoting United States v. Singleton, 107 F.3d 1091, 1102 (4th Cir. 1997))).

Here, as excerpted in detail above, Petitioner repeatedly sought to impede court proceedings when he refused to acknowledge his identity or the authority of the Court. More importantly, Petitioner repeatedly stated on the record that he

16

did not understand the criminal charges or the associated punishments. Arraignment Tr. 6-9, ECF No. 40. The Court expressly warned Petitioner that if he did not terminate his obstructionist behavior, which appeared to be designed to delay or frustrate the criminal proceedings, the Court would have no choice but to appoint counsel. Id. at 9-10. When Petitioner continued to refuse to acknowledge that he understood the charges or potential punishments, the Court appointed counsel over Petitioner's objection. See United States v. Brunson, 482 F. App'x 811, 818 (4th Cir. 2012) (finding that "the district court had sufficient grounds to revoke the Appellants' pro se status and appoint full-time counsel" based on the defendants' disruptive conduct, including their repeated assertion of nonsensical arguments and refusal "[f]rom the get-go . . . to acknowledge that they were the defendants named in the indictment"); Frazier-El, 204 F.3d at 558 (explaining that "[b]ecause an exercise of the right of self-representation necessarily entails a waiver of the right to counsel," a defendant's assertion of the desire to represent himself must not only be timely, clear, and unequivicol, but must also be "knowing, intelligent and voluntary"). The Court, however, both orally and in writing, repeatedly informed Petitioner of his right to change course, abandon his obstructionist position, and file a motion invoking his right to represent himself. Such a

motion was never filed, and Petitioner instead continued to contend that he was not the defendant named in the indictment and that this Court had no jurisdiction over the case. See Brunson, 482 F. App'x 818 (noting that the defendants never indicated "that they were willing to stop their disruptive and obstructive conduct," and up until the day of jury selection, they "continued to claim they were not defendants in the case and that the district court did not have jurisdiction").

As supported by the cases cited above, Petitioner fails to demonstrate that this Court abused its discretion in rejecting Petitioner's request to proceed pro se.[3] Moreover, Petitioner's contention that the Court improperly relied on his lack of advanced training in the law is not supported by the record. The transcripts of Petitioner's pre-trial hearings reveal that the Court properly inquired into Petitioner's education and general capabilities in an effort to ensure that any waivers were knowingly and intelligently made. See United States v. Gallop, 838 F.2d 105, 109-110 (4th Cir. 1988) (indicating that a district court must "ensure that the decision to proceed pro se is made knowingly and intelligently," and that the court should

---

[3] The Court notes Petitioner's selective citation to the record in his § 2255 motion, whereby he focuses on the first two hearings at which he was permitted to proceed pro se. However, it was at the March 31, 2011 arraignment, when the Court complied with its obligation to explain the charges and the maximum possible punishments, that Petitioner's refusal to cooperate and refusal to acknowledge that he understood the charges resulted in counsel being appointed.

18

not only "explain the charges and the possible punishments," but also "develop on the record the educational background, age and general capabilities of an accused, so that the ability of an accused to grasp, understand and decide is fully known") (internal quotation marks and citations omitted). The Magistrate Judge's decision to appoint counsel was not a reflection on Petitioner's education level, but was instead a direct result of Petitioner's obstructionist behavior and refusal to acknowledge on the record that he understood the criminal charges pending against him or explain why he was unable to understand such charges.[4] Arraignment Tr. 8-9, ECF No. 40. Petitioner's refusal to engage in any meaningful exchange with the Court totally undercuts any suggestion on his part that he has been wronged by appointment of counsel. Accordingly, Petitioner has failed to demonstrate that the Court's decision to appoint counsel was in error, let alone an error of such magnitude that it is cognizable on collateral attack. Petitioner's first claim is therefore alternatively **DENIED** on the merits.

---

[4] The Court recognizes that Petitioner's conduct placed the Magistrate Judge in a difficult situation regarding the appointment of counsel. However, the propriety of the Magistrate Judge's ruling is best demonstrated by considering the alternative: allowing a criminal defendant to represent himself even though he has repeatedly stated in open court that he does not understand the criminal charges against him or the associated punishments.

19

## B. Failure to Verify Financial Status

Petitioner next argues that the Court erred by failing to comply with the federal statute requiring that defense counsel only be appointed to a "financially eligible person." 18 U.S.C. § 3006A(a)(1). Such claim, however, is procedurally defaulted as it is raised for the first time in the instant motion. Frady, 456 U.S. at 167-68. Petitioner has failed to demonstrate cause or prejudice excusing his procedural default, and the instant claim is therefore DISMISSED.

Alternatively, even if the instant claim is considered on the merits, Petitioner fails to demonstrate that he is entitled to collateral relief. First, Petitioner fails to provide any evidence demonstrating that, in 2011, he was in fact financially ineligible for the appointment of counsel. Second, as noted by the government, Petitioner's § 2255 motion appears to support the opposite finding, as it discusses Petitioner's inability to pay restitution in the amount of $275 per month because he "was not working at the time of the incident and his recent purchasing power was limited as a sporadic cab driver." Pet'r's § 2255 motion at 49, ECF No. 102. Third, although Petitioner refused to cooperate with court personnel when inquiries were made into his financial status, information received from his family members at the time he was sentenced confirmed his lack of resources. Presentence Investigation Report ("PSR") ¶¶ 119-

21 (reflecting that both Petitioner's ex-wife and his father reported that Petitioner rarely worked, had a very limited work history, and that he generally relied on his mother or his ex-wife for financial support). Fourth, even assuming that an error was committed regarding the assessment of Petitioner's ability to pay for counsel, Petitioner fails to demonstrate that such error is cognizable on collateral review. Cf. Vol. 7 Guide to Judiciary Policy § 210.40.30 (2014) (defining "financially unable to obtain counsel" as used in 18 U.S.C. § 3006A, and indicating that: (1) "[a]ny doubts as to a person's eligibility should be resolved in the person's favor"; (2) "erroneous determinations of eligibility may be corrected at a later time"; and (3) if a defendant is later found to have sufficient resources, he/she should be required to make reimbursement payments) (emphasis added).[5]

No order of this Court prevented Petitioner from retaining and paying an attorney of his choosing if he had the resources to do so. However, there was not at the time of his arraignment or sentencing, nor is there now, any evidence to suggest that Petitioner had such resources. Moreover, Petitioner fails to demonstrate that he was prejudiced by the Court's failure to perform, over his objections, a more searching inquiry of his

---

[5] The Guide to Judiciary Policy is available at: http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Viewer.aspx?doc=/uscourts/FederalCourts/AppointmentOfCounsel/vol7/Vol_07A.pdf

financial status. Accordingly, Petitioner's second claim is alternatively **DENIED** on the merits.

## C. Ineffective Assistance of Counsel

Petitioner next claims that his court-appointed lawyer provided constitutionally ineffective representation. Petitioner appears to argue that his lawyer was ineffective for failing to challenge this Court's jurisdiction, failing to argue that Federal Reserve Notes are not "money" and hold no value, and failing to challenge sentencing enhancements. Although such claims are procedurally proper in a § 2255 motion, for the reasons discussed below, they fail on the merits.

### 1. Jurisdiction

Beginning with defense counsel's handling of jurisdictional matters, Petitioner's counsel did challenge this Court's jurisdiction through the filing of a pre-trial written motion. ECF No. 21. A more detailed jurisdictional challenge was again raised by defense counsel on appeal. Both of such challenges were rejected. Petitioner therefore fails to satisfy the first prong of the ineffective assistance test outlined by the Supreme Court in Strickland as he fails to demonstrate that his lawyer committed error, let alone demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

22

Separately, Petitioner fails to "affirmatively prove prejudice," as he fails to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. As noted above, the Fourth Circuit squarely considered and found "no merit in [Petitioner's] jurisdictional argument." White, 480 F. App'x at 194. Petitioner's § 2255 motion fails to advance any evidence or argument that casts any doubt on such prior rulings or this Court's exercise of jurisdiction in this case.

Additionally, the Court rejects Petitioner's suggestion that his lawyer should have advanced a different species of jurisdictional challenge than those actually raised by defense counsel. Notably, even in hindsight, Petitioner fails to identify a valid basis for challenging this Court's jurisdiction.[6] Accordingly, Petitioner fails to demonstrate any constitutional deficiency based on counsel's failure to raise alternative jurisdictional challenges and further fails to affirmatively prove prejudice.

## 2. Federal Reserve Notes

Petitioner similarly fails to demonstrate either constitutionally deficient performance, or resulting prejudice,

---

[6] The alternative jurisdictional arguments suggested by Petitioner are discussed in greater detail below in Part D.

based on his claim that his lawyer should have argued that Federal Reserve Notes do not constitute "money" under federal statute because they are not backed by gold or silver. As explained by the Fourth Circuit, "Congress, in full accordance with its authority under article I, section 8, clause 5 of the Constitution, has established that Federal Reserve notes are legal tender." Pouncy v. First Virginia Mortg. Co., 51 F.3d 267, 1995 WL 140729, at *2 (4th Cir. 1995) (unpublished table opinion) (citing 31 U.S.C. § 5103). The Court in Pouncy therefore rejected the defendant's arguments that "hinge upon his belief that Federal Reserve notes are not money," characterizing such arguments as "clearly baseless under any conceivable set of facts." Id.

It is well-established that counsel is not required to raise futile matters, or matters that, while colorable, are unlikely to succeed. See Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) (indicating that counsel "is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success" for failing to pursue such claim); Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (finding that counsel was not constitutionally deficient for failing to file a motion that was not likely to succeed). Because Petitioner's contention that Federal Reserve Notes are not "money" is clearly without merit, Petitioner's counsel was

not deficient for failing to raise such challenge, and Petitioner did not suffer any prejudice based on counsel's decision not to raise such futile argument.

### 3. Miscellaneous Deficiencies

Petitioner advances various additional, largely undeveloped, arguments regarding counsel's performance, including his contention that counsel was ineffective for failing to demonstrate that the co-defendant in this case was the "mastermind," failing to prove that the criminal scheme was too "sophisticated" for the Petitioner to have devised, and failing to demonstrate that Petitioner never willfully stole any military gas cards. Such vague and conclusory assertions of error, unsupported by any new evidence, or even citations to the record, fail to demonstrate that defense counsel provided constitutionally deficient performance as they fail to illuminate an overlooked meritorious defense. Cf. United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quotation marks and citation omitted). Rather, such arguments ignore the trial evidence demonstrating that Petitioner was in fact the organizer of the criminal scheme. Furthermore, such collateral challenges fail to recognize that it is largely irrelevant to Petitioner's guilt which conspirator

25

developed the sophisticated cover-up of the criminal scheme or which criminal participant physically stole the gas cards that were misused.[7]

For similar reasons, the above referenced cursory assertions of error are insufficient to "affirmatively prove prejudice" as the mere hindsight identification of alternative theories that "could have" been presented at trial falls far short of the showing necessary to undermine this Court's confidence in the outcome. See Turcotte, 405 F.3d at 537 (labeling the defendant's arguments as "too sparse and unsupported to gain any traction," noting that "unsubstantiated and largely conclusory statements fall far short of carrying [the] burden of persuasion as to the two elements of the test outlined in Strickland").

Petitioner separately argues that defense counsel failed to recognize that Petitioner is a "state citizen" not a "federal citizen,"[8] and that he was improperly tried under the incorrect

---

[7] Although Petitioner's status as an organizer or leader of the criminal conspiracy did impact his sentencing Guidelines, such enhancement was plainly supported by the trial evidence. Notwithstanding such fact, defense counsel still challenged such enhancement at sentencing through a general objection, and the Court squarely addressed the leadership enhancement at sentencing and concluded that it was appropriate. Petitioner's hindsight challenge to counsel's performance thus fails to demonstrate either that counsel provided constitutionally deficient performance or that Petitioner suffered prejudice as a result. Strickland, 466 U.S. at 689, 693.

[8] To the extent such argument restates a jurisdictional challenge, as previously noted, Petitioner fails to provide any compelling argument

26

race label of "black." § 2255 Mo. 31, ECF No. 102. As the
government correctly notes in its responsive brief, the Court
was repeatedly made aware prior to trial that Petitioner is a
member of the Moorish Nation, and at sentencing, the Court
granted Petitioner's request to modify the PSR to indicate that
his claimed citizenship was "Moorish American" and his claimed
race was "Asiatic." Sent. Tr. 23-24, ECF No. 92. More notably,
however, is the fact that neither Petitioner's race or his
citizenship had any bearing whatsoever on the Court's
jurisdiction over this matter, Petitioner's guilt or innocence,
or the sentence imposed by the Court. See White, 480 F. App'x
194 ("Neither the citizenship nor the heritage of a defendant
constitutes a key ingredient to a district court's jurisdiction
in criminal prosecutions . . . ."). Accordingly, Petitioner's
ineffective assistance claim, as it relates to his race and
citizenship, plainly fails to satisfy either prong of the test
outlined in Strickland.

For the reasons set forth above, each of Petitioner's
various ineffective assistance claims is **DENIED**.

---

that this Court lacks jurisdiction, or that defense counsel was
constitutionally ineffective for failing to advance an alternative
jurisdictional challenge.

## D. Lack of Jurisdiction

Petitioner next claims, as he has from the very start of this case, that this Court lacks jurisdiction over him. Such claim is procedurally improper and fails on the merits.

### 1. Procedurally Improper

First, to the extent such claim represents the same argument Petitioner repeatedly sought to raise before this Court, and then subsequently raised in his direct appeal, Petitioner is barred from re-raising such claim on collateral attack absent an intervening change in the law, which has not been demonstrated here. See Roane, 378 F.3d at 396 n.7 (indicating that because there was not any change in the law warranting reconsideration of claims that were "already addressed and rejected on direct appeal," the district court correctly held that the defendants "cannot relitigate these issues" through asserting them in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (agreeing with the district court that the petitioner should "not be allowed to recast, under the guise of collateral attack, questions fully considered by [the Fourth Circuit]").

Second, to the extent Petitioner seeks to advance various newly formulated jurisdictional challenges rooted in theories not previously presented, such new claims are procedurally defaulted. Frady, 456 U.S. at 167-68. Although procedural

default may be overcome by demonstrating "cause" and "prejudice," id., here, Petitioner fails to demonstrate either cause for failing to litigate such claim on appeal or resulting prejudice. Petitioner likewise fails to demonstrate that a "miscarriage of justice would result from the refusal of the court to entertain" the instant claim on collateral attack. Mikalajunas, 186 F.3d at 493. Accordingly, regardless of whether Petitioner's jurisdictional challenges are an effort to relitigate a matter already decided by the Fourth Circuit, or advance newly formulated claims, such challenges are procedurally improper and are therefore **DISMISSED**.

## 2. Merits Analysis

Even if this Court had the ability to reach Petitioner's procedurally improper claims, they would be dismissed on the merits. First, to the extent Petitioner argues that his citizenship as a Moorish American prevents this Court from exercising jurisdiction over this criminal case, such frivolous argument fails on its face. See United States v. Burris, 231 F. App'x 281, 282 (4th Cir. 2007) (labeling as "patently frivolous" the defendant's argument "that the court lacked jurisdiction because of his status as a Moorish American National," noting that "[f]ederal district courts retain original jurisdiction over offenses against the laws of the United States" (citing 18 U.S.C. § 3231)).

29

Second, to the extent Petitioner offers what appear to be newly crafted claims contending that his offenses did not occur on federal lands and thus this Court lacks jurisdiction, or that he is only a "state citizen," not a "federal citizen," or that his offenses were otherwise "state offenses" within the jurisdiction of Virginia, not the federal government, such arguments fail on the merits. Each offense charged in the superseding indictment was a violation of the United States Criminal Code. Moreover, Petitioner's arguments ignore the trial evidence demonstrating the interstate nexus of his wire fraud crimes and related offenses.

Third, to the extent that Petitioner attempts to argue, by way of supplemental submissions, ECF Nos. 110, 111, that this Court lacks jurisdiction over the entire United States Criminal Code because 18 U.S.C. § 3231 was not properly authorized by Congress, this Court agrees with the wealth of prior case law rejecting such argument. See Turner v. United States, Crim. No. 09-180-WS-C, 2011 WL 5595939, at *5 (S.D. Ala. Sept. 8, 2011) (collecting cases, and noting that "every court to have addressed the question presented here—that is, the claim that Public Law 80-772, which is the provision that enacted 18 U.S.C. § 3231 establishing jurisdiction of the federal courts, is invalid because it was never voted into law by both Houses of Congress—has found same to be without merit on one of the three

30

following bases: (1) the 1948 amendment to 18 U.S.C. § 3231 was properly enacted; (2) even if the 1948 amendment to § 3231 is defective, the predecessor statute to § 3231 provides for jurisdiction; and (3) the 'enrolled-bill rule' forbids challenge to the validity of 18 U.S.C. § 3231") (citations omitted). Accordingly, even if this Court could reach the merits of Petitioner's direct jurisdictional challenges, such contentions would be **DENIED**.

## E. Restitution

Petitioner also challenges the restitution judgment entered in this case, contending that it is unconstitutionally excessive. For the same reasons previously stated regarding Petitioner's other procedurally improper claims raised for the first time in the instant § 2255 motion, such claim is **DISMISSED** as Petitioner fails to demonstrate cause and prejudice overcoming his procedural default.

Even assuming it was proper for this Court to reach the merits of such claim, it would fail. Restitution was mandatory in this case under federal statute and was calculated based on the victim's actual losses that were a direct result of Petitioner's crimes. 18 U.S.C. § 3663A; see 18 U.S.C. § 3664 (f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of

the economic circumstances of the defendant.") (emphasis added).

Moreover, considering the length of the conspiracy at issue and

the repetition of Petitioner's unlawful conduct, as well as the

substantial punishment authorized by law for Petitioner's

numerous wire fraud offenses, the amount of restitution ordered

in this case is proportionate to the seriousness of Petitioner's

crimes. See United States v. Newsome, 322 F.3d 328, 342 (4th

Cir. 2003) (reviewing the district court's proportionality

analysis and rejecting the defendant's argument that the

restitution order violated the Eight Amendment's "Excessive

Fines Clause"). Such claim is therefore alternatively DENIED.[9]

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion

is DISMISSED to the extent that Petitioner raises new claims for

relief that were not previously raised, and to the extent he

raises a jurisdictional challenge that was expressly considered,

and rejected, by the Fourth Circuit. Moreover Petitioner's

motion is DENIED in its entirety because all of Petitioner's

---

[9] The Court notes that although it has endeavored to separately and squarely address each of Petitioner's numerous arguments, including an argument presented in two supplemental filings, ECF Nos. 110, 111, Petitioner's lengthy § 2255 motion (64 pages), while organized, at times was not fully compartmentalized into discrete arguments. To the extent that any of Petitioner's sub-arguments are not expressly discussed herein, the Court denies such claims because, after review of Petitioner's entire § 2255 motion and reply brief, the Court identifies no valid basis for granting relief on collateral review.

claims, including his non-defaulted ineffective assistance claims, fail on the merits.

Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable on this record, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

/s/ ꧁꧂

**Mark S. Davis**
**UNITED STATES DISTRICT JUDGE**

Norfolk, Virginia
May 12 , 2014

34